Commonwealth of Pennsylvania *v.* Bessemer and Lake Erie Railroad Company, Appellant.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Bessemer and Lake Erie Railroad Company, Appellant *v.* Commonwealth of Pennsylvania, Appellee.

122

Argued October 7, 1980, before President Judge CRUMLISH and Judges MENCER, ROGERS, MACPHAIL and PALLADINO. Reargued November 18, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, WILLIAMS, JR. and PALLADINO. Submitted on briefs to President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and PALLADINO.

*David McNeil Olds,* with him *Carl F. Chronister, Edward T. Baker* and *Donald J. Harrell, Reed, Smith, Shaw & McClay,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for appellee.

Opinion by Judge Craig, August 7, 1981:

The Bessemer and Lake Erie Railroad Company (B&LE) and the Commonwealth have cross-filed exceptions to our opinion and orders of March 5, 1981, reported at 57 Pa. Commonwealth Ct. 340, 427 A.2d 699 (1981), in this capital stock valuation case under the Act of June 1, 1889, P.L. 420, and its repealer and successor statute, the Act of March 4, 1971, P.L. 88. We will first address B&LE's exceptions and then those of the Commonwealth.

B&LE's exceptions are twofold in substance.[1]

First, B&LE submits that our methodology failed to discount its stated book equity. As we noted in our opinion on the merits, book equity cannot be said to be an exact measure of value, and we are cognizant that "exclusive reliance upon accounting figures is unacceptable." *Commonwealth v. Penn Square Management Corp.*, 39 Pa. Commonwealth Ct. 127, 394 A.2d 1095 (1978). However, our determination of capital stock value did not rest upon book equity figures, but, rather, for consistency of methodology, merely gave equity equal weight in averaging it with the values derived by capitalization of earnings and dividends. Our approach obviously went beyond B&LE's account-

---

[1] Of B&LE's six enumerated exceptions, numbers 1 and 2 formally except to our findings of capital stock value, taxable stock value, capital stock tax and the respective judgments, for all the years in question other than 1967. Numbers 3 and 4 address the manner in which we incorporated equity into the analysis and number 5 addresses the dividend capitalization rate question. Exception number 6, which B&LE did not brief objected to the final values for 1965, 1966, 1968, and 1972 as being in excess of the highest valuations suggested by the parties (as reflected in Table D in our initial opinion, 57 Pa. Commonwealth Ct. at 352, 427 A.2d at 704). In any event, it would seem clear that this court has the power, in this *de novo* proceeding, to find values in excess of the parties' values whenever the evidence supports the values finally determined.

124

ing records. In six out of nine years,[2] the final value found was substantially less than book equity, ranging from 94% of equity (1970) to less than 70% (1974), thus discounting book equity to that substantial extent. The statute does not direct nor have the cases held that equity should be consistently discounted to a given proportion. All that the cases have held is that stated book values cannot be the sole determinant of actual value.

B&LE's remaining exception claim is addressed to our derivation of capitalization rates for dividends, and consists of two points: (1) because the Commonwealth relied on rates of 7% and 8% for capitalization of dividends and earnings respectively, we should have looked to that differential to derive the dividends rates from our adopted earnings rates, and not to the 8%/10% differential we did follow; and (2) that, for that derivation, we should have reduced the earnings capitalization rates by the numerical difference between the Commonwealth's rates, not by the proportionate difference we did use.

On the first point, as we noted in our initial opinion, the values indicated by capitalizing dividends and earnings at 8% and 10% respectively were, with few exceptions, substantially higher than the values claimed by the Commonwealth; that "unexplained magnanimity" in the Commonwealth's value claims was such as to weaken confidence in the whole approach. Obviously, using rates of 7% and 8% would yield values which would exceed the claimed values by even greater amounts; thus, although we declined to accept either pair of rates as ideal, having nowhere else to turn, we chose the 8%/10% rates as the less unreasonable alternative. B&LE thus urges us now to

---

[2] We do not consider the 1967 value here, because it was determined by operation of law.

rely on the more unreasonable alternative, which we decline to do.

With respect to the second point, B&LE has not articulated any basis for the greater validity of a numerical adjustment of the adopted earnings capitalization rates. B&LE's contention for the numerical adjustment is conclusory, possibly result-oriented. As noted in our opinion on the merits, B&LE presented little evidence on the capitalization of dividends; the sparse record on this issue confronted us as it now confronts B&LE. We believe that our resolution was fully reasonable in view of the record.

The Commonwealth's exceptions to our resolution of the 1967 timeliness issue and our rejection of its proffered capitalization rates are addressed sufficiently in our initial opinion, and require no further discussion.

The Commonwealth's remaining exception challenges the general methodology we used to determine the final values, characterizing it as a "formula." We do not agree, because our resolution was not a mere mechanical exercise. Three-way averaging (which the Commonwealth itself has used from time to time) might be considered offensively formulaic only if the most sorely contested issue in this case, that of capitalization rates, is ignored; we resolved that issue on the basis of the detailed investigation and expert judgment of the witnesses. We have by no means propounded any categorical statement that these rates or this methodology alone would be appropriate in succeeding cases; the legitimacy of a given analysis in effectuating the intent of the taxing statute can only be assayed in view of the record in a particular case, because, as we reiterated in our initial opinion, "each company must be viewed in its particular circumstances." 57 Commonwealth Ct. at 346, 427 A.2d at

702, quoting *Commonwealth v. Rosenbloom Finance Corp.*, 91 Dauph. 359, 362 (1969).

Accordingly, we dismiss the parties' exceptions.

FINAL DECREE IN NOS. 447 T.D. 1970, 235 C.D. 1974, 236 C.D. 1974, 237 C.D. 1974, 238 C.D. 1974, 338 C.D. 1974, 555 C.D. 1975, 1212 C.D. 1975, 1554 C.D. 1979, 1556 C.D. 1979, AND 1558 C.D. 1979

AND NOW, August 7, 1981, the exceptions filed by Bessemer and Lake Erie Railroad Company and by the Commonwealth of Pennsylvania to our March 5, 1981 opinion and order in the above captioned case are dismissed; the prothonotary is hereby directed to enter judgment in favor of the Commonwealth and against the Bessemer and Lake Erie Railroad Company in the amount set forth in our decree of March 5, 1981, which is hereby rendered final.